UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JACOB E.,

        Plaintiff,

    v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

Case No. 1:25-cv-00284

Hon.  Maarten Vermaat
U.S. Magistrate Judge

## **OPINION**

This opinion addresses Plaintiff's appeal of Administrative Law Judge (ALJ) Christopher Ambrose's decision partially denying Plaintiff's request for Disability Insurance Benefits (DIB).   Judge Ambrose determined that from July 30, 2021, through April 8, 2024, Plaintiff was under a disability as defined by the Social Security Act.   Plaintiff agrees with that finding.

Additionally, Judge Ambrose determined that beginning April 9, 2024, Plaintiff was <u>not</u> under a disability as defined by the Social Security Act.   Plaintiff disagrees with that finding and this appeal is brought pursuant to 42 U.S.C. § 405(g).

The record before the Court demonstrates that Plaintiff suffers from a number of severe medically determinable impairments, including palatal myoclonus with palatal tremor, insomnia, residuals of COVID-19, depression, and anxiety.   Plaintiff asserts that the ALJ's determination that Plaintiff's disability ended on April 9, 2024, was arbitrary, not supported by evidence, and that the ALJ erred in considering opinion evidence by not appropriately evaluating the mandatory facts of consistency

1

and supportability.   The Commissioner asserts that the ALJ gave good reasons for finding that Plaintiff's disability ended on April 9, 2024, and that the ALJ followed the regulations and did not err in considering the opinion evidence from the medical providers.

For the reasons stated below, the undersigned affirms the ALJ's decision.

## I.   Procedural History

### A.   Key Dates

The ALJ's decision notes that Plaintiff applied for DIB on July 2, 2022, alleging an onset date of July 30, 2021.   ECF No. 4-2, PageID.30.   Plaintiff's claim was initially denied by the Social Security Administration (SSA) on January 24, 2023. *Id.*   The claim was denied on reconsideration on May 16, 2023.   *Id.*   Plaintiff then requested a hearing before an ALJ.   ALJ Ambrose conducted a hearing on Plaintiff's claim on April 9, 2023, and issued his decision on May 16, 2024.   *Id.*, PageID.30, 44. Plaintiff timely filed this lawsuit on March 14, 2025.   ECF No. 1.

### B.   Summary of ALJ's Decision

The ALJ's decision correctly outlined the five-step sequential process for determining whether an individual is disabled.   ECF No. 4-2, PageID.31-32.   The ALJ also outlined the eight-step sequential process for determining whether a disability continued <u>through the date of the decision</u>.   *Id.*, PageID.32-33.   The ALJ explained the transition to the eight-step process as follows:

> If the claimant is found disabled at any point in the process, I must also determine if his disability continues through the date of the decision. In order to find that the claimant's disability does not continue through the date of the decision, I must show that medical improvement has

occurred which is related to the claimant's ability to work, or that an exception applies (20 CFR 404.1594(a)). In most cases, I must also show that the claimant is able to engage in substantial gainful activity (20 CFR 404.1594(a)). In making this determination, I must follow an additional eight-step evaluation process for the Title II claim (20 CFR 404.1594). If I can make a decision at a step, the evaluation will not go on to the next step.

*Id.*, PageID.32.

Before stating her findings at each step, the ALJ concluded that Plaintiff's Date Last Insured (DLI) was December 31, 2026.   *Id.*, PageID.34.

At Step One of the five-step process, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since July 30, 2021.   *Id.*

At Step Two of the five-step process, the ALJ found that the Plaintiff had the following severe impairments: palatal myoclonus with palatal tremor, insomnia, residuals of COVID-19 infection, depression, and anxiety.   *Id.*, PageID.34.

At Step Three of the five-step process, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one or the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before going on to Step Four of the five-step process, the ALJ found that the Plaintiff had the following RFC from July 30 through April 8, 2024:

to perform a full range of work at all exertional levels but with the following nonexertional limitations: He could not climb ladders, ropes, or scaffolds or be exposed to unprotected heights. He could not tolerate frequent verbal communication. He was able to perform simple, routine, repetitive tasks with occasional interaction with coworkers and the public. In addition, due to his palatal myoclonus and mental conditions, he would miss two days of work per month and he would be off-task at least 15% of the workday in addition to his regularly scheduled breaks.

*Id.*, at 35.

The ALJ included the following:

- a summary of the regulations regarding how the ALJ will address Plaintiff's symptoms, *id.*, PageID.35,

- a summary of Plaintiff's statements, *id.*,

- a summary of the medical records relating to his January 2021 COVID-19 infection, and symptoms including palatal myoclonus with palatal tremor, with symptoms of a clicking spasm that seemed to come from his larynx, right side contracture with grunting vocalization, Bell's palsy, fatigue, loss of motor function, neuropathy, brain fog, sleeping issues, and treatment with Dr. Dale Ekbom, M.D., and voice therapy with Heidi Vogley, CCC-SLP, *id.*, PageID.36.

- a summary of opinions by the State agency medical and psychological consultants, and the opinion of voice therapist Heidi Vogley, CCC-SLP, *id.*,

At Step Four of the five-step process, the ALJ concluded that, from July 30, 2021, through April 8, 2024, the Plaintiff was unable to perform Past Relevant Work (PRW).  *Id.*, PageID.37-38.

At Step Five of the five-step process, the ALJ considered the Plaintiff's age, education, work experience and RFC and concluded that no jobs existed from July 30, 2021, through April 8, 2024, that Plaintiff could perform.  *Id.*, PageID.38.  The ALJ found that Plaintiff was disabled as defined under the Social Security from July 30,

2021, through April 8, 2024.  *Id.*, PageID.39.  Plaintiff does not challenge this portion of the ALJ's decision.

The ALJ, however, concluded that "[t]he claimant's disability ended April 9, 2024, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8))."  *Id.*, PageID.44.  In making this finding, the ALJ considered the eight-step process.

The ALJ then explained that Plaintiff had no new impairments since April 9, 2024, the date that his disability ended.  *Id.* PageID.39.

The ALJ addressed Step One by finding that Plaintiff had not engaged in substantial gainful activity since July 30, 2021.

At Step Two of the eight-step process, the ALJ then determined that beginning April 9, 2024, the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ considered listings 2.00 (speech impairment), 11.00 (neurological impairment), 3.00 (respiratory impairment), and 12.04, 12.06 (mental impairments).

The ALJ considered paragraph B criteria and determined that Plaintiff had a mild limitation in understanding, remembering, or applying information, moderate limitations in interacting with other people and in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing himself.  *Id.*, PageID.40.

At Steps Three through Six, the ALJ determined that medical improvement in

Plaintiff's condition occurred as of April 9, 2024.   The ALJ explained:

> The claimant testified at his hearing that he was doing better, and he described staying active with tightrope therapy to help with imbalance issues.  His mother also testified that he had improved significantly and was capable of living on his own.  Medical notes also indicate significant improvement.  (6F/14; 13F/37; 15F/43).  Given the claimant's improvement with imbalance and his mother's reports that he was capable of living on his own, I find that he would no longer experience off task and-or absence limitations, and so I find medical improvement occurred as of April 9, 2024, the date of the hearing.

*Id.*, PageID.41.

The ALJ found that beginning April 9, 2024, Plaintiff had the RFC to:

perform a full range of work at all exertional levels but with the following nonexertional limitations: He cannot climb ladders, ropes, or scaffolds or be exposed to unprotected heights. He cannot tolerate frequent verbal communication. He can perform simple, routine, repetitive tasks with occasional interaction with coworkers and the public.

*Id.*

In addition to stating that Plaintiff had reported improvement in his condition,

the ALJ discussed the following regarding Plaintiff:

> He planned to start a new job with American Income Life Insurance in September 2022. (8F/35).  The claimant was on a "good routine" in March 2023, which had improved his overall voice qualities. (15F/32).  By August 2023, the claimant reported to his speech therapist that he had seen benefits from therapy strategies and that his palatal tremor had been less severe, such that before bed the frequency of his tremor would decrease then stop all together. (13F/11).  By the time of his April 2024 hearing, he testified that he was doing better and was staying active with tightrope therapy to help with imbalance issues, while his mother testified that he had improved significantly and was capable of living on his own.
>
> Nonetheless, I acknowledge that ongoing limitations remain, as the claimant's palatal myoclonus has been severe enough to prevent sleeping, speaking, and breathing in a normal rhythm, and he has a history of upper and lower extremity neuropathy, as well as severe post-exertion malaise, dyspnea on exertion, brain fog, fatigue, and nonrestorative sleep. (2F/8/23; 5F/21).  Raynaud's syndrome, which worsened following COVID-19 infection, exacerbated his symptoms, causing skin dryness and circulation problems. (13F/22).  He was unable to undergo treatment with Botox, and he did not achieve any relief with ganglion block procedure or chiropractic therapy. (2F/6; 13F/39).  Accordingly, I find the claimant would continue to be limited to no more than nonexertional residual functional capacity stated above, although the noted improvement, particularly given his improved imbalance and his mother's statements that he was capable of living on his own, indicate that he would no longer experience off task and-or absence limitations.

*Id.*, PageID.42.

6

The ALJ found the prior administrative findings of the State agency medical consultants unpersuasive because they were inconsistent with Plaintiff's medical symptoms and diagnosis.  *Id.*

Additionally, the ALJ found persuasive prior administrative findings of the State agency psychological consultants who determined that Plaintiff could perform simple repetitive tasks and occasionally interact with coworkers and supervisors.  *Id.*  The ALJ determined that these findings were consistent with Plaintiff's inpatient psychiatric treatment, his relative normal mental status examinations, and were consistent with the treatment he received for anxiety and depression.  *Id.*

Further, the ALJ found treating provider Heidi Vogley's opinion that Plaintiff could not perform unskilled work as unpersuasive because it was an opinion that was outside her area of expertise.  *Id.*, PageID.42-43.

At Steps Seven through Eight, the ALJ determined that as of April 9, 2024, based upon Plaintiff's RFC, he could perform jobs in the national economy and, as of that date, he was not disabled under the Social Security Act.  Plaintiff challenges this portion of the ALJ's decision.

## II.    Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence."  *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g).  The Court may not conduct a *de novo* review of

the case, resolve evidentiary conflicts, or decide questions of credibility.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence.  42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight.  *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

### III.    Analysis

Plaintiff argues that the ALJ's determination that he was no longer disabled as of April 9, 2024, is not supported by any medical evidence in the record.  The Plaintiff argues that the "ALJ cannot simply designate a date out of the blue" to

support a termination of benefits date.    ECF No. 14, PageID.1144.

The ALJ determined that Plaintiff could perform the full range of work with limitations.    Prior to April 9, 2024, the RFC included:    "In addition, due to his palatal myoclonus and mental conditions, he would miss two days of work per month and he would be off-task at least 15% of the workday in addition to his regularly scheduled breaks."    ECF No. 4-2, PageID.35.

After April 9, 2024, the RFC no longer included missing two days of work per month and being off-task 15% of the workday.    *Id*., PageID.41.

RFC is an administrative finding of fact reserved for the Commissioner.    20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Deaton v. Comm'r of Soc. Sec.*, 315 F. App'x 595, 598 (6th Cir. 2009).    While the RFC determination is made by the ALJ, an ALJ's RFC determination must be supported by substantial evidence.    *Torres v. Comm'r of Soc. Sec*, 490 F. App'x 748, 754 (6th Cir. 2012).    If the record contains "conflicting evidence that would suggest further limitations, under the substantial evidence standard, administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion."    *Id.* Ultimately, the ALJ may consider *all* relevant evidence on record, including an individual's medical history, reports of daily activity, and recorded observations. SSR 96-8p.    The "ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and nonmedical evidence."    *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

Contrary to Plaintiff's argument, the ALJ did not just pick a random date out

9

of the blue in determining that Plaintiff's condition improved to the point that he no longer would miss two days of work per month and would not be off-task at least 15% of the workday. The ALJ held a hearing on April 9, 2024, where he was able to observe and question Plaintiff about his medical condition and symptoms. Initially, the ALJ determined that Plaintiff would be capable of performing work from July 30, 2021, through April 8, 2024, "with two days off and time off task due to symptoms of his mental impairments and fatigue" days in bed, and a week of hospitalization. ECF No. 4-2, PageID.37. The ALJ noted significant medical improvement, and that Plaintiff had testified at the April 9, 2024, hearing that he was doing better. *Id.*, PageID.65. Plaintiff's mother noted that he could live on his own, and can perform activities such as personal care, preparing meals, cleaning, laundry, yard work, driving a vehicle, shopping for groceries, and managing personal finances. *Id.*, PageID.40.

In addition to the ALJ's reasoning quoted above, the ALJ cited to the medical records noting improvement. *Id.*, PageID41; (*citing* ECF No. 4-8, PageID.484; ECF No. 4-9, PageID.651; ECF No. 4-10, PageID.809; ECF No. 4-11, PageID.879; ECF No. 4-13, PageID.1000; ECF No. 4-15, PageID.1062). Further, the ALJ relied on the assessments of the State agency psychological consultants that Plaintiff could perform repetitive tasks and occasionally interact with coworkers and supervisors. ECF No. 4-2, PageID.42.

Plaintiff has not shown error in the ALJ's RFC assessment but essentially requests that the Court reach a different conclusion by reweighing the medical

evidence and evaluating the evidence differently.    But that is not ground for relief. *Brown v. Comm'r of Soc. Sec.*, No. 1:23-CV-122, 2024 WL 1259726, at *5 (W.D. Mich. Feb. 7, 2024), *report and recommendation adopted*, No. 1:23-CV-122, 2024 WL 1251232 (W.D. Mich. Mar. 25, 2024), and *report and recommendation adopted*, No. 1:23-CV-122, 2024 WL 1258380 (W.D. Mich. Mar. 25, 2024).    As stated above it is the ALJ's responsibility to determine Plaintiff's RFC.    Here, the ALJ properly considered the medical and non-medical evidence in formulating Plaintiff's RFC. Substantial evidence supports the ALJ's decision that Plaintiff was no longer disabled after April 9, 2024.

Plaintiff argues that the ALJ failed to properly evaluate the supportability and consistency of the medical opinions. An ALJ is required to evaluate the medical opinions pursuant to 20 U.S.C. § 404.1520c.    The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including opinions from a treating source. 20 U.S. § 404.1520c(a).    Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors in paragraph (c)(1) through (c)(5) of this section, as appropriate."    20 U.S. § 404.1520c(b)(1).    These factors include: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors which tend to support or contradict the opinion.    20 C.F.R. § 404.1520c(c)(1)–(5).    In general, the ALJ must explain his consideration of the supportability and consistency factors but the ALJ is not required to explain how the remaining factors were considered.

11

20 C.F.R. §  404.1520c(b)(2).    The regulation explains "supportability" and "consistency" as follows:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)–(2).

As to the persuasiveness of the opinions of the medical providers, the ALJ was unpersuaded by the State agency medical consultants who found Plaintiff's physical impairments non-severe.   ECF No. 4-2, PageID.42.   This finding was favorable to Plaintiff.

The ALJ found the State agency psychological consultants who determined that Plaintiff could perform simple repetitive tasks and occasionally interact with the coworkers and supervisors as persuasive because the evidence was supported by Plaintiff's in-patient hospitalization in September 2022 and his relatively normal mental status examinations.   *Id.*   The ALJ found the findings were consistent with Plaintiff's treatment for anxiety and depression.   *Id.*

The ALJ was unpersuaded by the opinion of voice therapy treating provider Heidi Vogely[1] that Plaintiff could not perform his prior work due to the claimant's

---

[1]    Vogely testified that she is a speech language pathologist and specializes in the

difficulty with attention and focus and would be unable to perform unskilled work, due to "overwhelming depression knowing what he is not able to do."[2]    *Id.*, PageID.42.    The ALJ found that this opinion was outside the area of Vogely's expertise.    Plaintiff has not set forth reasons that could establish that the ALJ erred in making this conclusion.

Judge Ambrose found that the psychological consultant opinions were supported by Plaintiff's September 2022 inpatient hospitalization records and consistent with Plaintiff's treatment for anxiety and depression.    Here, while ALJ Ambrose's direct treatment of supportability and consistency was brief, his reasoning for finding the opinion of the State agency psychological consultants persuasive is sufficiently supported by his earlier discussion of Plaintiff's medical records during the RFC analysis.    *See e.g.*, *Forrest v. Comm'r. of Soc. Sec.*, 591 Fed. Appx. 359, 366 (6th Cir. 2014) ("here the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three"); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (it is sufficient for an ALJ's reasons for determining the consistency of a medical opinion to be found elsewhere in the decision); *Dunlavy v. Comm'r of Soc. Sec.*, No. 24-3333, 2024 WL 4558606, at *3 (6th Cir. Oct. 23, 2024) (finding that the ALJ's evaluation of medical opinion was supported where the inconsistencies in the record were discussed in the same section of her decision); *Lillian A. v. O'Malley*, No. 4:23-CV-4-CRS-HBB, 2024 WL 987571, at *2 (W.D. Ky.

---

voice arena.    ECF No. 4-2, PageID.98.

[2]    The ALJ did determine that Plaintiff was unable to perform his past relevant work.    ECF No. 4-2, PageID.43.

Mar. 7, 2024) ("Indeed, an ALJ's reasons for rejecting or adopting a medical opinion may be gleaned from elsewhere in the written decision: 'meaningful judicial review exists – even if the ALJ provided only a cursory or sparse analysis – if the ALJ made sufficient factual findings elsewhere in the decision that supports her conclusion.'") (citing *Booker R. v. Comm'r of Soc. Sec.*, No. 3:22-cv-170, 2023 WL 4247312, at \*4–5 (S.D. Ohio June 29, 2023).

The undersigned finds that the ALJ's decision meets the requirements of 20 C.F.R. § 404.1520(c) and is supported by substantial evidence.

## IV.    Conclusion

Accordingly, the Court respectfully affirms the ALJ decision because the ALJ properly applied the regulations and because substantial evidence supports his decision.

Dated:    February 13, 2026                  /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U.S. MAGISTRATE JUDGE